MERRITT, Circuit Judge,
dissenting.
The court predetermines the facts of this case by finding as a fact that Kevin *447 Simmonds yelled, “I have a gun” and pointed a silver object out of the window as though he were firing a pistol at the five officers who had his truck blocked. The court refers to the evidence as “the uncontested statement by Kevin that T have a gun’ ” and that he “brandished a weapon” (Opin. p. 446). These so-called “facts” on which it upholds the summary judgment are very much contested by the parties. They are the most crucial, contested facts in the case.
The police officers testified as a unit that they believed Kevin had a silver gun because he had his hands and arms extended in a firing position out of the driver’s side of the truck and appeared to be pointing a shiny object at one of the officers. They testified that, at that point, two of the officers immediately opened fire and killed Kevin. The problem is, of course, there was no gun at all. The officers and the court respond that Kevin must have been pointing his cell phone at them out of the window. But this seems highly unlikely because the cell phone was found resting inside the truck on the seat, not where it would have dropped from Kevin’s hands when he was killed. At least one officer conceded that any weapon would likely have fallen onto the ground outside the driver’s side door of Kevin’s truck. A neutral fact finder could easily find that there was no gun and no threat of deadly force.
As to the officers’ claim that Kevin yelled, “I have got a gun,” our court finds as fact that this statement was made but was “inaudible.” But two facts could easily lead a jury to find that the officers’ claim is false and that its falsity completely undermines the defense. First, the audio picked up clearly other sounds before, during, and after the shooting. For example, the audio recorded the sound of Dirkse’s voice yelling, “Show me your hands” four times and “Get out of the car.” After Kevin refused to comply and instead backed down the two-track, the police officers pulled up their cars within a few feet of Kevin’s truck in order to block his escape. A minute after Dirkse yells, “Show me your hands” four times, we hear the sound of Dirkse leaving the car and cocking his shot gun once outside. Less than thirty seconds later we hear very distinctly the fourteen shots being fired at Kevin by the police officers a few feet away. Then, less than two minutes later, we hear the sound of a medical bag being knocked over when taken out of the police SUV that was parked immediately in front of Kevin’s truck.
Based on the clarity of these other sounds, it is unlikely that the victim ever said he had a gun. But this issue is not for me to decide or for the court to decide because it is a classical example of a factual issue for the jury. Anyone who listens to the audio recording could certainly doubt that the officers are telling the truth. They may have simply invented a story in order to claim that they were in mortal danger. It would not be the first time police have invented such a defense. We should not just accept as gospel the word of witnesses who have a strong motivation to he when other evidence calls their veracity into question. The question for the jury is whether the claimed “I have a gun” statement was “inaudible,” as the majority argues, or simply “invented” falsely by the officers as a defense.
There is a second piece of evidence that weighs strongly against the majority’s “inaudible” thesis. Officer Shanlian, a sixth officer, who remained back down the farm road near the Simmonds’ home, some 400 feet away, testified that he also heard Kevin’s “I have a gun” statement. Kevin’s voice would have carried through trees at least the distance of a football field for *448 Shanlian to hear it. If Kevin’s voice was that loud, it seems highly unlikely that the statement could have been “inaudible.” More likely, it was simply invented. Thus, I would reverse and remand the case for trial. Our Court’s effort to predetermine the facts in favor of the officers and prevent a trial of the case is inconsistent with the Seventh Amendment and our long, common law tradition of calling on juries to resolve factual disputes. This principle is particularly important when an individual is killed by state officers and the issue is one of whether there was a gross abuse of governmental power. Judges, like others, are sometimes predisposed to believe what they want to believe, but we should resist that temptation here and let the jury decide after the parties have fully developed the case.
At present, the case remains a puzzle. Why did the police rush so quickly, aggressively, and impulsively to hem Kevin in, surrounding him like an animal with guns drawn? Why was his family back at his house not allowed to intervene to avoid such a confrontation? Were reasonable steps taken by the police to consider the situation carefully and avoid shooting a man who was perhaps mentally ill and, in fact, unarmed? These are relevant questions unmentioned by the majority that would be better considered by the jury after the full development of the case by competent counsel.